UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Alison Abdul-Kareem, | : | Case No. 1:17-cv-1613 |
| | : | Judge |
| Plaintiff, | : | |
| | : | |
| v. | : | PLAINTIFF'S MOTION FOR |
| | : | TEMPORARY RESTRAINING ORDER |
| Board of Park Commissioners of the | | AND PRELIMINARY INJUNCTION, |
| Cleveland Metropolitan Park District, et al. | : | WITH MEMORANDUM IN SUPPORT |
| | : | |
| Defendants. | : | |

Plaintiff Alison Abdul-Kareem ("Abdul-Kareem"), pursuant to Fed. R. Civ. P. 65(a) and (b), respectfully moves this Court for a temporary restraining order and preliminary injunction enjoining Defendants from enforcing and applying any policy that prohibits, interferes with, or otherwise disrupts efforts by Plaintiff (as well as others not presently before the Court) to engage in the circulation of initiative petitions within the public areas of Edgewater Park.

In the absence of a preliminary injunction order, Abdul-Kareem will suffer irreparable harm in that her First Amendment rights will continue to be trampled and infringed. Specifically, in the absence of injunctive relief, Plaintiff's constitutional right to peacefully assemble, to free speech, and to petition the government for redress is imperiled, and Plaintiff will continue to operate under unlawful threat of deprivation of her aforesaid constitutional rights.

As this action seeks to protect individual rights afforded by the United States Constitution, Plaintiff respectfully request that the requirement that she provide security pursuant to Rule 65(C) be waived. In support thereof, the following Memorandum in Support is tendered.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER

This is an action for a declaratory judgment, a temporary restraining order, preliminary and permanent injunctive relief, and nominal damages under, *inter alia*, 42 U.S.C. § 1983. Unless Defendants are immediately enjoined, Plaintiff (as well as others not presently before the Court) have and will continue to suffer immediate irreparable harm to their rights under the First Amendment to the United States Constitution (made directly applicable to the Defendants via the Fourteenth Amendment) due to Defendants' conduct and on-going threatening conduct. Protection from the on-going harm being suffered by Plaintiff can only be remedied by immediate relief from this Honorable Court.

I.  **FACTS**

Edgewater Park is a public park within the Cleveland Metroparks system, owned and maintained by The Board of Commissioners of the Cleveland Metropolitan Park District.

Plaintiff Alison Abdul-Kareem is presently involved in an initiative petition effort to place before the voters of the City of Cleveland a proposal to "decriminalize" marijuana.

In support of her activities, Abdul-Kareem, was present at Edgewater Park on July 27, 2017, where she was soliciting signatures in support of the foregoing initiative petition effort. At all times, Abdul-Kareem remained within areas of Edgewater Park open to the public, specifically a public sidewalk.

Within a short period of time after having commenced soliciting signatures for the initiative petition effort on July 27, 2017, Abdul-Kareem noticed members of the Park District's law enforcement unit ("Park Rangers") monitoring her activities, including taking photographs or video of her. Shortly thereafter Abdul-Kareem was approached by other Park Rangers who represented and held themselves out as police officers of the Park District. Notwithstanding Abdul-

Kareem's presence on the public sidewalk within a public park, Park Rangers declared that Abdul-Kareem could not collect signatures within Edgewater Park without a permit and demanded that she cease such collection efforts. A Park Ranger demanded that Abdul-Kareem produce identification, to which Abdul-Kareem complied. Abdul-Kareem was informed that she was being detained. Eventually, the Park Ranger stated that he would not charge her criminally for soliciting signatures without a permit, but that she was not permitted to do so. Abdul-Kareem informed the Park Ranger that she intended to continue to solicit signatures in the park without a permit. Abdul-Kareem then walked approximately 25-50 feet away from this first group of Park Rangers and continued to solicit signatures.

A few minutes later, a second group of Park Rangers again approached Abdul-Kareem and again declared that Abdul-Kareem could not collect signatures within Edgewater Park without a permit. On this occasion the Park Rangers scared off a would-be petition signer and surrounded Abdul-Kareem, standing very close to her in an intimidating fashion. After a few minutes, this second group of Park Rangers discontinued their harassment.

In light of the interference with her speech activities and the threat of continued harassment, Abdul-Kareem discontinued her efforts to collect signatures on the initiative petition in Edgewater Park. This notwithstanding, Abdul-Kareem (as well as others) desire in the future to collect signatures in support of the present initiative petition effort (as well as future initiative petition efforts) within the public areas of Edgewater Park and without having to first obtain a permit, and in particular, at the location where Abdul-Kareem positioned herself but where multiple Park Rangers demanded that she cease such activities lest she face the threat of on-going harassment by Park Rangers. However, in doing so, Abdul-Kareem, as well as others, risk the real and present consequences of engaging in such activities protected by the First Amendment, including, without

limitation, criminal charges, or on-going interference by police officers of the Cleveland Metropolitan Park District due to, inter alia, the direction and policies given to them by the Board of Commissioners of the Cleveland Metropolitan Park District.

## II.   LAW AND ARGUMENT

Plaintiff is entitled to an immediate order enjoining the Cleveland Metropolitan Park District, including all of its Park Rangers, from prohibiting or otherwise interfering with individuals engaged in the exercise of their First Amendment rights and, in particular, circulation of initiative petitions on the sidewalks, and other public areas of Edgewater Park. In determining whether to grant this Motion, the Court must consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether the issuance of injunctive relief would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of a temporary restraining order or preliminary injunction.[1] These factors are to be balanced against one another and should not be considered prerequisites to the granting of a TRO.[2]

### A.  Strong Likelihood of Success on the Merits

Plaintiff is highly likely to succeed on the merits because Defendants' conduct clearly violates well-established constitutional rights. Courts ordinarily use a three-step analysis in analyzing the constitutional rights accorded free speech rights: (1) a determination of whether the speech is protected speech; (2) a determination of the nature of the forum in which the speech

---

[1] *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc), quoting *Sandison v. Michigan High Sch. Athletic Ass'n,* 64 F.3d 1026, 1030 (6th Cir. 995). See also *Southwest Williamson County Cmty. Assoc. Inc. v. Slater*, 243 F.3d 270, 277 (6th Cir. 2001). See *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.,* 163 F.3d 341, 347 (6th Cir. 1998).

[2] See *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.,* 163 F.3d 341, 347 (6th Cir. 1998).

4

would be presented; and (3) an analysis of whether the justification presented by the state satisfies the relevant standard. *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). Each step is discussed below.

### i. The Constitutional right to engage in political speech

#### a) Generally

The freedom to speak about elections, government, and politics lie at the core of the First Amendment. This was enunciated by the Supreme Court in Mills v. Alabama:[3]

> Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of [the First Amendment] was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes

Then, in *Buckley v. American Constitutional Law Foundation, Inc.*,[4] the Supreme Court reaffirmed that, with respect to ballot-initiative petitions, "[p]etition circulation…is 'core political speech,' because it involves 'interactive communication concerning political change.'"[5] Furthermore, "[a]sking a voter to sign a petition is speech protected by the United States Constitution; and gathering at the polls to solicit signature is the kind of association that the First Amendment protects."[6] "For speech concerning public affairs is more than self-expression; it is

---

[3] 384 U.S. 214, 218-219 (1966).

[4] 525 U.S. 182 (1999).

[5] *Id.* at 186 (quoting *Meyer v. Grant*, 486 U. S. 414, 422 (1988)); *see also Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307, 316 (6th Cir. 1998) (—*Meyer* reasoned that the circulation of a petition to obtain signatures for a statewide ballot initiative involved core political speech.‖) Petition circulating is considered core political speech "because circulating such a petition necessarily involve[s] expression and discussion of political issues because to get signatures[,] a petition circulator must persuade citizens that they should support placing an issue before the electorate." *Pizza*, 154 F.3d at 316; *accord Meyer*, 486 U.S. at 421 (initiative petition circulation —of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change.‖)

[6] *Clean-Up '84 v. Heinrich*, 590 F.Supp. 928, 930 (M.D. Fla. 1984), *aff'd*, 759 F.2d 1511 (11th Cir. 1985). See also, *Liberty Twp. Tea Party v. IBEW*, S.D.Ohio No. 1:10cv707, 2010 U.S. Dist. LEXIS

the essence of self-government."[7] Because initiative petitioning goes to the essence of self-government and constitutes and implicates core political speech and associational rights, "First Amendment protection for such interaction…is 'at its zenith.'"[8]

### b) Anonymous political speech

"As a general matter, anonymous speech is protected by the First Amendment… Registration requirements dissuade potential speakers by prohibiting anonymous speech."[9] The First Amendment Activity Permit process, by, among other things, requiring the name, address, and telephone number of the would-be speaker, offends the protections of anonymous speech.

### ii.  Edgewater Park sidewalks

The fact that Plaintiff's proposed speech is constitutionally-protected speech does not guarantee her access to all government-owned property at all times;[10] instead, the public forum analysis applies to regulations of private speech on government-owned property.[11] The Supreme Court "has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing

142835, at *11 (Oct. 28, 2010) ("As Defendants do not dispute that the challenged speech - petition circulation - is protected by the First Amendment, the Court will address only the second and third factors.)

[7] *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964).

[8] *Buckley*, 525 U.S. at 183 (quoting *Meyer*, 486 U.S. at 425).

[9] *McGlone v. Bell*, 681 F.3d 718, 734 (6th Cir.2012), citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342, 115 S. Ct. 1511, 131 L. Ed. 2d 426 (1995); *Buckley, 525, U.S., at* 199-200; *Talley v. California*, 362 U.S. 60, 64, 80 S. Ct. 536, 4 L. Ed. 2d 559 (1960); *Watchtower Bible & Tract Soc. of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 166, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002); McIntyre, 514 U.S., at 341-342.

[10] *See Capitol Square Review & Advisory Bd.,* 515 U.S. at 761.

[11] *Putnam Pit, Inc. v. City of Cookeville, Tenn.,* 221 F.3d 834, 842 (6th Cir. 2000).

to use the property for other purposes."[12] Under that analysis, "the extent to which the Government can control access depends on the nature of the relevant forum."[13]

To this end, the Supreme Court has developed a tripartite categorization of public spaces: (1) traditional public forum; (2) designated public forum; and (3) nonpublic.[14] Given that the forum here is a *public* park (*i.e.* not "nonpublic"), the Court's analysis should center on the first two categorizations.

"Traditional" public forum analysis is as follows: "public places" historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be "public forums."[15] Traditional public forum property occupies a special position in terms of First Amendment protection: the more a forum resembles a traditional public forum, the greater an interest the state must show to justify restricting access.[16] Quintessential examples of a "public forum" are those open spaces – streets, parks, and *sidewalks* – to which the public generally has unconditional access and which "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."[17] Public parks, streets, and sidewalks are public forums because open access by all members of the public is integral to their function as central gathering places and arteries of transportation. Public access is not a matter of grace by government officials but rather is inherent in the open nature of the locations. As a

---

[12] *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983).

[13] *Id.*

[14] *United Food & Commercial Workers Local 1099 v. City of Sidney,* 364 F.3d 738, 746 (6th Cir.2004).

[15] *Id.*

[16] *Student Government Assoc. v. Board of Trustees of University of Massachusetts*, 676 F.Supp. 384, 386 (D. Mass. 1987), *aff'd* 868 F.2d 473 (1st Cir. 1989).

[17] *Hague v. Committee for Industrial Organizations,* 307 U.S. 496, 515 (1939) (Roberts, J.).

result, expressive activity is compatible with the normal use of a public forum and can be accommodated simply by applying the communication-neutral rules used to regulate other, non-speech-related conduct on the premises.[18]

It is unquestionable then that public parks, like Edgewater Park are "quintessential public forums."[19] In such places, the government's ability to permissibly restrict expressive conduct is very limited: the government may enforce reasonable time, place, and manner regulations as long as the restrictions "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Additional restrictions such as an absolute prohibition on a particular type of expression will be upheld only if narrowly drawn to accomplish a compelling governmental interest.[20]

### iii.   Efforts to Regulate Speech-Related Activities within Edgewater Park are not Narrowly Tailored to Serve a Significant Governmental Interest

Having established that the Park District is attempting to regulate protected speech in a traditional public forum, the remaining inquiry is whether this particular regulation is narrowly tailored to serve a significant government interest, and leaves open ample alternative channels of communication.[21]

---

[18] See *Grayned v. City of Rockford,* 408 U.S. 104, 116 (1972).

[19] *Bays v. City of Fairborn*, 668 F.3d 814, 820 (6th Cir.2012), citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983)

[20] *United States v. Grace,* 461 U.S. 171, 177 (1983) (citations omitted) (quoting *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983)).

[21] *Bays*, at 821, citing *Saieg v. City of Dearborn*, 641 F.3d 727, 821. "Because Bays and Skelly wish to engage in protected speech in a traditional public forum, the applicable principle in this case is that reasonable '[t]ime, place, and manner restrictions may be enforced . . . so long as they are content neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" (quoting *M.A.L. v. Kinsland*, 543 F.3d 841, 850 (6th Cir. 2008)).

It is unfathomable that the Park District could enunciate some putative governmental interest that is served by requiring that all expression take place from a stationary location inside Edgewater Park. Indeed, the Sixth Circuit Court of Appeals, dealing with a substantially similar regulation stated unequivocally, "To be a constitutional time, place, and manner restriction, the solicitation policy must be narrowly tailored to serve a significant government interest. The solicitation policy does not meet this standard."[22]

In *Bays*, the regulation prohibited "all 'solicitation of causes' outside of booths, including sign display, leafletting, and discussions, without regard to whether speaking is designed to gather crowds…"[23] and was applied against religious adherents who wished to proselytize within a public park during a festival. The restriction at issue in this matter is far more pernicious; prohibiting all "First Amendment Activity" outside of the designated area. Like *Bays*, the Park District's regulation has no regard as to whether the speaking is designed to gather crowds, and in fact, is significantly broader than regulation struck down in *Bays*. Indeed, "First Amendment Activity" includes, for instance, reading a copy of George Orwell's classic 1984 on the beach, listening to music through headphones while walking along a park path, or simply talking to your spouse as you walk together along that same path; all of these activities are prohibited by a plain reading of the Park District's First Amendment Conditions of Use.

Further, with respect to the requirement that a would-be speaker apply for an obtain a permit prior to exercising her First Amendment rights, as the Sixth Circuit Court of Appeals stated in *Parks v. Finan*:[24]

---

[22] *Id.*, at 822, internal citation omitted.

[23] *Id.*, at 825.

[24] 385 F.3d 694, 701 (6th Cir.2004).

> It is offensive--not only to the values protected by the First Amendment, but to the very notion of a free society--that in the context of everyday public discourse a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so. Even if the issuance of permits by the mayor's office is a ministerial task that is performed promptly and at no cost to the applicant, a law requiring a permit to engage in such speech constitutes a dramatic departure from our national heritage and constitutional tradition.

Abdul-Kareem has run up against a policy that constrains the First Amendment within one area of a public park – but only after applying for and receiving a permit – enforced by Park Rangers who punctuate the policy with intimidation tactics. In short, Abdul-Kareem has a substantial likelihood of success on the merits.

### iv. The Regulations do not leave ample alternative channels of communication.

"An alternative is not ample if the speaker is not permitted to reach the intended audience."[25] Abdul-Kareem's intended audience on the evening of July 27, 2017, were the visitors to Edgewater Park attending the Edgewater Live concert event occurring near the Edgewater Beach House. The Edgewater Park designated First Amendment Activity area is on the opposite side of Edgewater Park from the Beach House area where the concertgoers were congregating.

Because Abdul-Kareem would not have been able to interact with and engage the vast majority of the concertgoers, the designated First Amendment Activity area would not leave ample channels of communication.

### B.  Irreparable Injury.

Even a temporary deprivation of First Amendment freedom of expression rights is generally sufficient to prove irreparable harm.[26] Thus, satisfaction of the first prong of the

---

[25] *Saieg v. City of Dearborn*, 641 F.3d 727, 740 (6th Cir.2011), quoting *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir.1990).

[26] *National People's Action v. Village of Wilmette*, 914 F.2d 1008, 1012 (7th Cir. 1990).

preliminary injunction standard – demonstrating a strong likelihood of success on the merits – also satisfies the irreparable injury standard.[27] Abdul-Kareem has demonstrated a substantial likelihood of success on the merits. Thus, Abdul-Kareem will suffer irreparable injury if Defendants are not immediately enjoined from enforcing its unconstitutional policy.

### C.  Public Interest and Private Harm.

The Defendants will not suffer any harm if they are enjoined from enforcing its unconstitutional policy against Abdul-Kareem (and others not presently before the Court). The unconstitutional character of the actions and policies of the Defendants against those who wish to engage in First Amendment-protected activities in a quintessential public forum (such as Edgewater Park) leaves the Defendant with no legitimate interest in the continued application of such policies. Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights."[28]Abdul-Kareem (as well as others), on the other hand, desires to participate in imminent discussions of public issues, and will suffer irreparable harm if the Defendants' unconstitutional activity and policies are not immediately enjoined.

### III.  CONCLUSION

Defendants have unconstitutionally interfered with Abdul-Kareem's rights to engage in fundamentally protected speech in a traditional public forum. They have done so in a manner that is not narrowly-tailored. Resultantly, Abdul-Kareem has suffered and is in continuous and imminent threat of suffering further irreparable injury absent relief being afforded by this Court.

---

[27] *See Elrod v. Burns*, 427 U.S. 347, 373 (1973) (holding that if a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated); *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (finding that "when a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor").

[28] *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

Meanwhile, public interests at stake always mitigate in favor of ameliorating constitutional infirmities. For the foregoing reasons, Abdul-Kareem requests that the Court issue a Temporary Restraining Order and Preliminary Injunction that does the following:

(1) *Enjoins the Board of Commissioners of the Cleveland Metropolitan Park District, including all park rangers thereof and others acting in concert therewith, from prohibiting or otherwise interfering or harassing Plaintiff (as well as any other individuals) engaged in the circulation of initiative petitions within the public areas of Edgewater Park; and*

(2) *Enjoins the Board Commissioners of the Cleveland Metropolitan Park District, including all employees thereof and others acting in concert therewith, from requiring that Plaintiff (as well as any other individuals) apply for or otherwise obtain permission from the Board of Commissioners of the Cleveland Metropolitan Park District prior to engaging in the circulation of initiative petitions within the public areas of Edgewater Park.*

Respectfully submitted,

/s/ Brian C. Shrive

Brian C. Shrive
(OH Bar No. 0088980)
Christopher P. Finney
(OH Bar No. 0038998)
FINNEY LAW FIRM, LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, Ohio 45245
Tel: (513) 943-6656
Fax: (513) 943-6669
Email: brian@finneylawfirm.com
Email: chris@finneylawfirm.com

*Attorney for Plaintiff*

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing, together with the Verified Complaint (Doc. No. 1), will be served via email upon the following on the date of the filing:

Rosalini Fini, Esq.
Chief Legal and Ethics Officer
Cleveland Metropolitan Parks District
rmf1@clevelandmetroparks.com


/s/ Brian C. Shrive
_____
Brian C. Shrive
(OH Bar No. 0088980)

13